# N. Y. SUPERIOR COURT.

## ANN STODDARD agt. CHARLES DENISON.

A mortgage of chattels is s sale on condition. The legal title is vested in the mortgagee, subject to the mortgagor's right to perform the condition.

After default, such *legal* title becomes absolute, leaving a mere equity of redemption in the mortgagor.

Such equity can be disposed or got rid of only by an action in equity to foreclose ; or, by a sale under the power contained in the mortgage; or, possibly, by lapse of time.

Where a mortgagee takes possession of the mortgaged property, it will, if of sufficient value, be deemed a satisfaction of the debt until the equity is foreclosed. It will not, however, extinguish the mortgagor's right to redeem.

To extinguish the equity of redemption, by a sale under the power contained in the mortgage, it must be a *fair* and *bona fide* sale.

The mortgagee has no right, by any unfairness, to sacrifice the property, and deprive the mortgagor of a surplus over the debt, which, by an openly conducted sale, might arise.

A mortgagor's only remedy is by action to redeem. He cannot maintain an action *at law, under any circumstances*. Not even where the mortgaged property has been wrongfully and unfairly disposed of.

In an action by a mortgagor against a mortgagee, to recover damages for an unfair sale of the property, where it appeared that the property was the furniture of a hotel, distributed among a large number of rooms, and which the mortgagee had sold under the mortgage, chiefly in bulk, for a sum much less than what it would have brought if it had been sold in suitable lots, it was *held* the action could not be sustained. The action should have been to redeem.

Relief in equity can be granted *ex æquo et bono*, only upon payment or tender of the whole debt. Therefore, where upon an unfair sale, less than the whole debt was realized, a tender of the residue of the debt must be made to lay a foundation for an action to redeem.

In an equitable action to redeem, the court can give complete relief; and where the mortgagee, by disposing of the property, has prevented a redemption, reparation may be made in damages.

*General Term, November,* 1869.

*Before* BARBOUR, *Ch. J., and* MONELL, *J.*

APPEAL from a judgment.

Action to recover damages for wrongfully selling personal property under chattel morgtgage.

The plaintiff, to secure the payment of a sum of money

on demand, gave to the defendant a mortgage upon certain personal property, mentioned and described in a schedule thereto annexed. It contained an agreement, on the part of the mortgagor, that in case of default in payment, it should be lawful, and the mortgagee was authorized and empowered to enter upon the premises ; to take away, and to sell, and dispose of the property for the best price that he could obtain, and out of the moneys arising therefrom to retain and pay the sum mentioned, and all charges touching the same, rendering the surplus, if any, to the mortgagor's representatives or assigns. Until default the mortgagor was to remain in possession of the property.

The mortgage became due, and remaining unpaid, the defendant took possession of the mortgaged property, and also of certain other property not included in the mortgage, but which he claimed under the mortgage, and sold the same at public auction.

On the trial, before M. Justice FREEDMAN and a jury, it was proved that the mortgaged property, together with other property of the plaintiff not included in the mortgage, was taken possession of under the mortgage by one Mealio, under a special power of attorney from the defendant. The property taken consisted of the furniture of a hotel, and was distributed among some seventy rooms. An advertisement of the sale was posted and published in one newspaper once before the sale.

On the day of sale an auctioneer employed by the defendant's attorney proceeded to sell. In many respects the evidence of the manner in which the sale was conducted was conflicting.

On the part of the plaintiff it was shown that, with one or two exceptions, the property was not sold separately, or in parcels, or even in small lots ; but the contents, more or less, of each room were sold collectively, or in one lot or parcel.

The defendant's witnesses testified that the sale of the

entire contents of rooms was confined to the bedrooms. There was also a difference in the evidence in respect to the number of persons present at the sale. The auctioneer and the attorney of the defendant testified that from thirty to forty persons attended the sale; that they endeavored to sell the property in lots or parcels, or separately, and could not get any bids, and were obliged to sell the entire contents of a room. But, on the part of the plaintiff, it was shown that she requested the attorney and auctioneers to sell separately, or in small lots, and they refused. The contents of each room were put up and sold in one lot.

There was some evidence that the property covered by the mortgage, and also of the property not included therein, was together worth about $2,500; the value of the latter property was estimated at about $500.

The sale realized only about $670. The evidence in respect to most of the matters in dispute was conflicting.

A motion was made to dismiss the complaint on the following grounds:

*First,* Because on default in payment the title to the property vested in the mortgagee, and he could dispose of it as his own in any manner he saw fit.

*Second,* That the action should have been to redeem, after first offering to pay the debt.

*Third,* That the defendant was not liable for the acts of the attorney or auctioneer.

The motion was denied and the defendant excepted.

There were some requests to charge the jury embracing, substantially, the same proposition as was contained in the third ground for the nonsuit. And also the further request to charge that the defendant is not liable for property not included in the mortgage, unless it was taken and sold with his knowledge or under his direction.

The requests were refused and defendant excepted.

The court charged the jury that the mortgage transferred the legal title to the property to the mortgagee, subject

only to be defeated by performance of the condition. That upon failure to perform, such title became absolute, notwithstanding the provision for a sale. : That if the defendant had only taken possession of the property, the plaintiff could still redeem. · That the defendant was not bound to sell; he might have kept the property, subject to the mortgagor's right of redemption, but if he sold he was bound to obtain the best possible price; and if he did not choose to sell the entire property together, he was bound to offer it in such lots and parcels as were calculated to bring the highest price.

It was left to the jury to determine whether, under the evidence, the property was sold in a manner calculated to bring the highest or best price.

They were separately instructed in regard to the property not included in the mortgage, which could have been easily separated from the mortgaged property, the defendant had no right to sell such property, and the plaintiff was entitled to recover its value.

Exceptions were taken to several parts of the charge.

The jury gave the plaintiff a verdict for $1,492.

The defendant appealed.

ERASTUS COOK, *for appellant.*
Mr. COMSTOCK, *for respondent.*

*By the court,* MONELL, J.—If this action can be sustained at all, I think there was sufficient evidence to go to the jury, upon the two principal questions of fact, namely, as to whether the sale was conducted in a manner calculated to produce the best price, and as to the amount of damages.

In respect to the property claimed not to have been covered by the mortgage, there is no doubt of the plaintiff's right to recover. There was evidence to support the claim, and it was properly submitted to the jury.

Nor have I any doubt that the defendant, if otherwise liable, must be held responsible for the acts of his agent,

Stoddard agt. Denison.

whom he empowered to take and sell the property; and such responsibility extends to all the property the agent took under the mortgage, and for the manner in which he disposed of it.

The evidence bearing upon the question, as to whether the sale was made in a manner calculated to produce the best price, and also upon the question of damages, was conflicting. But, as I think it was sufficient to go to the jury, we cannot disturb their verdict.

The mortgaged property consisted of household furniture, the contents and fixtures of a bar, and other property used in a hotel. It is distributed among some seventy rooms in a five-story building; most of them being used as bedrooms, and containing the usual bedroom furniture. There were parlors containing the usual parlor furniture, and bar-rooms, and dining-rooms, each with the furniture usual to such rooms.

The evidence of the plaintiff and her witnesses showed that she requested to have the property sold separately, which was refused, and it was sold collectively, the entire contents of room by room throughout the house. On the part of the defendant much of this was denied, leaving it in doubt whether the property could have been sold separately at all.

The plaintiff testified that she had purchased the property at the time it was put into the hotel, and stated the aggregate price she had paid for it; and there was other evidence of value. But, as my conclusion is arrived at upon the law of the case, no further reference to the facts is necessary.

We are now brought to the question whether this action can be maintained at all, and the question is presented in two aspects:

*First.* Does the title of a mortgagee, on default, become so far *absolute* as to deprive the mortgagor of all right or interest in the mortgaged property? and, *second*, assuming that it does not, and that there is a remaining right or in-

terest in the mortgagor, can such right be enforced in an action at *law*?

I think the *first* branch of the inquiry can be correctly answered in the negative.

A mortgage of personal chattels *is a sale on condition*.

The *legal* title to the chattel is vested in the mortgagee, subject to the right of the mortgagor *to* perform the condition. Until default there is no doubt of the mortgagor's right to perform, and upon performance to reinvest himself with the legal title.

In *Cortelyou* agt. *Lansing*, (1 *Cai. C. in Er.*, 202,) it is said the title passes, *with a condition of a defeasance;* in *Charter* agt. *Stevens*, (3 *Denio*, 35,) it is said the mortgage transfers a *defeasible* title to the property mortgaged; and in *Mattison* agt. *Baucus*, (1 *N. Y. R.*, 297,) the interest of the mortgagor is called "a right of redemption only." Until default, therefore, the legal title of the mortgagee is subject to a defeasance, upon performance of the condition by the mortgagor. Upon breach of performance such title becomes *absolute at law*. If any right thereafter remains in the mortgagor, it is a mere equity of redemption. That such right to redeem remains to the mortgagor seems to be well settled (*see Patchin* agt. *Pierce*, 12 *Wend.*, 62, *and cases there cited*).

NELSON, J., says, "notwithstanding the forfeiture and perfection of title in the mortgagee in such case, I have always supposed, and have no doubt, that in *equity*, upon well settled principles, the mortgagor has the right to redeem." And Story says, although the title becomes absolute at law, equity will interfere to compel a redemption (*Story on Bail.*, § 287; *Fuller* agt. *Acker*, 1 *Hill*, 475; 1 *Parsons on Con.*, 453; *Mattison* agt. *Baucus*, 1 *N. Y. R.*, 297). I shall have occasion to refer to several other cases on this subject, when I endeavor to ascertain what are the remedies of the mortgagor.

It is evident, then, that the *absolute* title, which a mort-

gagee acquires *after* forfeiture, which term is so frequently used in the cases, is an absolute legal title; and that, notwithstanding default, there is a right, or, as it is called, an equity of redemption remaining in the mortgagor.

The respective rights and interests of the parties, therefore, are—the legal title is vested in the morgagee, subject to an absolute right of redemption upon performance of the condition; upon breach of the condition the *legal* title becomes absolute in the mortgagee, leaving a mere *equity* in the mortgagor.

The legal title becoming absolute or perfect in the mortgagee, and he having taken possession of the mortgaged property, let us see how the equity of the mortgagor may be disposed or got rid of.

In *Charter* agt. *Stevens*, (*ubi sup*.,) two remedies are suggested. The court say the mortgagor was not divested of *all* interest in the property, for he still had (after default) an equity of redemption which the court of chancery would protect and enforce. " On the other hand the mortgagee might go into chancery to compel a speedy redemption, or to foreclose that right; and the same object might be attained by a fair public sale of the property, on due notice to the mortgagor." That case also holds that no more property can be sold than is sufficient to satisfy the mortgage debt, &c. These remedies are also recognized in *Patchin* agt. *Pierce*, (*supra*). NELSON, J., after asserting the continuance of this equity in the mortgagor, after default, says, " it seems, however, that the right to redeem may be foreclosed without judicial proceedings, by a sale of the property as in the case of a pledge upon reasonable notice to the mortgagor." Tender of the money after forfeiture (he says) does not operate to reinvest the title in the mortgagor, so as to enable him to recover *at law*, and this is sustained by the vice-chancellor, and approved by the chancellor in *Rogers* agt. *Traders' Insurance Company*, (6 *Paige*, 587, 594).

These remedies—actual foreclosure by judicial proceed ings, or sale under the power contained in the mortgage— seem to be the only modes by which the equity of the mortgagor can be extinguished. These are distinctly re- cognized in *Talman* agt. *Smith*, (39 *Barb.*, 390,) where the court say, this right of redemption continued in the mortga- gor until the property *was sold*. There is no doubt, I think, that when the mortgagee takes possession of the mortgaged property, it will, until the equity is foreclosed, be deemed a satisfaction of the debt if it be of sufficient value.

In *Case* agt. *Boughton*, (11 *Wend.*, 106,) the defendant gave the plaintiff a chattel mortgage to secure payment of the note in suit, and when the note became due the plain- tiff took possession of the mortgaged property, but did not sell, and the court held it was payment. The court say, that the property being of *sufficient value* to satisfy the debt, no further act besides taking possession was necessary to constitute payment. And they further say, that if the property had been sold upon the mortgage when it was for- feited, and upon a fair sale brought less than the amount of the debt, the mortgagee would have been entitled to de- mand the balance of his debt. In *Wheeler* agt. *Miller*, (2 *Denio*, 170,) this effect of taking possession is substantially affirmed. The action was *trover* by the mortgagor, after tender of the debt but after default. It was held the action could not be maintained. At *law* he had no title whatever, and could only redeem in equity. The court say the mort- gage authorized but did not *require* a sale to satisfy the debt; and such power of sale does not extend the time of payment, or under any circumstances reinvest the mortga- gor with title to the property

Although the mortgagee, after forfeiture, takes possession of the property (and such possession while it continues, if the property is of sufficient value, will be deemed payment of the debt,) it will not extinguish the equity of the mortga-

gor, unless, perhaps, upon his failure for a sufficient length of time to asser this right. Story says, (2 *Story Eq.*, § 1031,) the equity of redemption may be asserted by the mortgagor, "if he brings his bill to redeem within a reasonable time." (*Kemp* agt. *Westbrook*, 1 *Ves.*, 278 ; *Harrison* agt. *Hart, Comyns R.*, 392, 411).

Such equity can be extinguished, therefore, only in some of the modes which have been suggested, namely, by a judicial decree, a sale under the power contained in the mortgage, or possibly by lapse of time. If the mortgagee resorts to none of these remedies, it is clear that the mortgagor may, certainly within a reasonable time after forfeiture, notwithstanding his default, assert his right in equity to redeem.

Where a mortgagee, after default, brought *trover* against a person claiming under the mortgagor for a conversion of the chattel, the court held (*Hinman* agt. *Judson*, 13 *Barb.*, 629,) that there was a clear right of redemption in equity in the mortgagor, and that such right had not been extinguished at the time the suit was commenced. The mortgagee had never taken possession or sold the property. In that case the defendant, in effect, was allowed to redeem, the recovery being limited to the amount due the plaintiff, instead of being for the value of the property.

To extinguish the equity of the mortgagor after forteiture, by a sale under the power contained in the mortgage, it must be a *fair* and *bona fide* sale. Such is the language of many of the cases. In *Charter* agt. *Stevens*, (*ubi sup.*,) it is said the equity may be extingushed "by a fair public sale"; and in *Chamberlain* agt. *Martin*, (43 *Barb.*, 610,) the end may be attained, the court say, "assuming such sale to be fair and *bona fide.*"

In needs, however, no citation of cases to establish a principle so obviously just, that an unfair or fraudulent sale of mortgaged property by the mortgagee should and will not defeat or extinguish the equitable rights of the mortgagor. The mortgagee has no right, by any unfairness, to

Stoddard agt. Denison.

sacrifice the property and deprive the mortgagor of a sur-
plus over the debt, which, by an openly conducted sale,
might arise. His absolute legal title does not enable him to
deal with the property quite as though it was his own, and
the remark, apparently to the contrary, of Justice GRIDLEY,
in *Dane* agt. *Mallory*, (16 *Barb*., 53, 54,) is qualified. He
says, "especially as against the plaintiffs, *who are mere
strangers*." And I cannot think Justice WELLES, when he
said, in *Talman* agt. *Smith*, (*ubi supra*,) the mortgagees
"had a right to take the property into their possession, *and
dispose of it at their pleasure*," intended to assert that they
could make an unjust and unfair sale to the prejudice and
injury of the mortgagor.

Questions involving the rights and interests of the parties
to a chattel mortgage have usually arisen in actions at law.
In those actions it has uniformly been held that the legal
title of the mortgagee was so absolute and perfect that it
could not be divested or disturbed in such an action. I
have not been able to find any case of a proceeding in
equity to assert the right of redemption, either before or
after forfeiture. But it is everywhere assumed and con-
ceded that such a proceeding may be instituted and will be
entertained.

It follows from all this that the mortgagor's *only* remedy
is by seeking relief in equity, whether he seeks to redeem
before or after forfeiture. The *dicta* in all the cases to which
I have referred is to that effect; and although perhaps,
mere *dicta*, is entitled to all the weight of authority.

Nor do I see how an action *at law* can be maintained
under *any circumstances*. Not even where the mortgaged
property has been wrongfully and unfairly disposed of. So
far as the *legal* rights or obligations are concerned, a mort-
gagee may treat the property as his own, and if he squan-
ders, destroys it, or gives it away, he incurs no liability *at
law*. The party aggrieved must go into a court of equity,
which alone can afford him redress.

It is evident, therefore, that the plaintiff in this action has mistaken her remedy, and instead of an action to recover damages for a wrongful sale of the property, she should have invoked the aid of the equitable powers of the court, in the nature of an action to redeem.

I have not without much hesitation and doubt, satisfied myself that the defendant having, by a sale of the property, put it beyond the power of the court to allow a redemption, so as to reinvest the title in the mortgagor, the plaintiff might not be excused from going into equity, and be allowed to be compensated in this form of action, inasmuch as no other relief can, under the facts of the case, be awarded in equity. But upon consideration I find what appears to me an insuperable difficulty. Relief in equity can be granted, *ex æquo et bono*, only upon payment or tender of payment, of the whole mortgage debt. That must be averred and proved; and it lays at the foundation of the only remedy of the plaintiff in this case. Had the sale of the mortgaged property realized sufficient to have satisfied the debt together with the costs and expenses of sale, then, perhaps, a tender would not be necessary. But it was not so in this case. There remains, after applying the proceeds of the sale, a considerable amount of the mortgage debt still unpaid; and before the defendant can be prosecuted in any form of action, whether for unfairly disposing of the property or otherwise, he must be paid or have tendered to him the balance due.

Were it not for such fact we might sustain this judgment by allowing an amendment, or by conforming the pleadings to the facts. But as there has not been any tender, and a part of the debt is yet unpaid, this action, so far as regards any of the property covered by the mortgage must entirely fail.

The right to recover the value of the property claimed not to have been included in the mortgage depends upon wholly different principles, which need not be alluded to here.

Stoddard agt. Denison.

I have no doubt that in an equitable action to redeem, after a tender of the sum remaining due, the court can give complete relief. Having acquired jurisdiction of the action for the purpose of redemption, if it shall appear that the defendant has wrongfully placed it beyond the power of the court to decree a redemption, it can in the same action make complete reparation to the plaintiff in damages. Such damages, of course, would be assessed under issues properly framed and sent to a jury to be tried. (*Woodcock* agt. *Bennet*, 1 *Cow. R.*, 711 ; 2 *Story Eq.*, §§ 794–799).

All right to redeem was taken away, if the sale by the defendant was a fair and justifiable sale. If it was not a fair sale, then the plaintiff has not lost the right of redemption, and the question of the fairness of the sale must be litigated in the action to redeem.

If the views I have expressed are correct the motion for a nonsuit, on the ground that the action should have been to redeem, should have been granted, so far, at least, as the property included in the mortgage was in controversy.

I think, therefore, there should be a new trial. Upon which new trial the case, as the pleadings now stand, will be confined to the property claimed not to be covered by the mortgage.

Judgment reversed, and a new trial ordered.